**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

THE ESTATE OF B.I.C., a Minor )
Child, Deceased, LARRY F. CROSETTO, )
Individually and as Next Friend of )
C.S.C., a Minor Child, and MARY )
LOU CROSETTO, )
                     Plaintiffs, )  **CIVIL ACTION**
                                                 )
v. )  No. 10-1017-MLB-DWB
                                                 )
LINDA GILLEN, Individually and as )
an agent of the Kansas Social and )
Rehabilitation Services, )
                                               )
                     Defendant. )

**MEMORANDUM AND ORDER**

     Before the court is defendant's motion to dismiss plaintiffs' complaint for failure to state a claim and lack of jurisdiction. (Doc. 8). The motion has been fully briefed and is ripe for decision. (Docs. 9, 17, 19). For the reasons stated more fully herein, defendant's motion is denied.

     Plaintiffs filed a 42 U.S.C. § 1983 and various state claims against defendant. Specifically, plaintiffs allege that defendant violated B.I.C. and C.S.C's Fourteenth Amendment substantive due process rights by failing to adequately investigate reports of child abuse and remove B.I.C. and C.S.C. from their father's home. Plaintiffs further allege that defendant violated their Fourteenth Amendment right to familial relationship.

**I.    FACTS**

     The facts of this case as alleged in the complaint are unfortunate. Plaintiffs Larry and Mary Crosetto's ("the Crosettos")

are the grandparents of C.S.C. B.I.C. was also their granddaughter. For the majority of 2006, B.I.C. lived with the Crosettos except weekends. In August 2006, B.I.C.'s mother left Randy Coons, B.I.C.'s father, and moved into the Crosettos' home. B.I.C. remained living with the Crosettos until August 18, 2007. B.I.C.'s mother died on August 9, 2007, and Coon removed B.I.C. from the Crosettos' home on August 18. B.I.C. continued to stay with her grandparents on weekends and at times when Coons did not have a babysitter.

In Fall 2007, the Crosettos noticed bruising on B.I.C. Their concern grew after B.I.C. received medical treatment on two different occasions for injuries "received under suspicious circumstances." (Doc. 1 at 3). On November 5, 2007, school officials called defendant because C.S.C. had some bruising that looked suspicious. On November 6, Mr. Crosetto called defendant but received no answer or returned phone call. He also tried unsuccessfully to call defendant on November 14, 15, and 16. Mr. Crosetto got in contact with defendant on November 20. Defendant indicated that she had interviewed a school official, Coons, his girlfriend Melissa Wells, and C.S.C. Defendant told Mr. Crosetto that a case was opened for C.S.C and B.I.C. and it would be approximately 30 days before a she made a recommendation.

On December 10, Mr. Crosetto made another call to defendant because the bruises on B.I.C. and C.S.C were escalating. Defendant told Mr. Crosetto to call the police. Defendant explained that "it was her duty to try to protect the family and keep it together." (Doc. 1 at 3). Mr. Crosetto set up an appointment to talk with defendant regarding her responsibilities.

On December 12, Mr. Crosetto asked school officials for help but

was told that SRS was handling the situation.  On December 23, the Crosettos' were at church when their family physician saw B.I.C.'s facial bruises.  The physician told the Crosettos that SRS should be notified and recommended that Dr. Han look at B.I.C. the following day.

The next day, Mr. Crosetto took B.I.C. to Dr. Han for examination.  Based upon his findings, Dr. Han called the police and sent a letter to the Coffeyville SRS office.  Dr. Han requested SRS to investigate the situation and get back to him, but defendant did not respond.

On December 28, the Crosettos went to their appointment with defendant.  Mr. Crosetto tried to give defendant a CD of pictures reflecting B.I.C. injuries, but she would not accept it and told Mr. Crosetto that the CD would be a police matter.  The meeting did not end amiably.  The Crosettos believed that defendant had some animus against them and was not going to protect B.I.C. and C.S.C.  "Mr. Crosetto made it clear that he was afraid she was not going to do anything until one of his grandchildren was killed."  (Doc. 1 at 4).

On January 17, 2008, the Coffeyville Police Department responded to a 911 call and found B.I.C. unresponsive in Ms. Well's care. B.I.C. had head trauma and bruises on her body.  She was hospitalized at the Coffeyville Regional Medical Center and then later flown to the St. Francis Medical Center in Tulsa, Oklahoma.  The doctors discovered "a brain bleed from a blow to the head and brain damage resulting from Shaken Baby Syndrome."  (Doc. 1 at 4).  On January 20, B.I.C. died from cerebral anoxia and cranial trauma caused by being shaken.

## II.     12(b)(6) STANDARDS

Defendant's motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6). The standards this court must utilize upon a motion to dismiss are well known. To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1953 (2009) (expanding Atl. Corp. v. Twombly, 550 U.S. 544, (2007) to discrimination suits); Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff. Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon this court's consideration. Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007). In the end, the issue is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005).

## III.    ANALYSIS

Defendant moves to dismiss plaintiffs' complaint on multiple grounds including lack of personal jurisdiction. Defendant claims that the court lacks personal jurisdiction because she was not properly served. Defendant was first served at her work. On March 10, 2010, defendant was personally served an alias summons. (Doc. 12). Plaintiffs filed their complaint on January 19, 2010, and served defendant within 120 days in accordance with Federal Rules of Civil Procedure 4(e) and (m). Therefore, defendant's claim of improper

service because she was first served at work is moot.

Moving to the merits of defendant's motion, she contends that no constitutional violation occurred as to any plaintiff. Civil rights statute 42 U.S.C. § 1983 renders liable any person who "under color of [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995) ("Section 1983 creates no substantive civil rights, only a procedural mechanism for enforcing them.").

While § 1983 permits the possible vindication of a plaintiff's rights, non-meritorious suits exact a high cost upon society and state actors. See Anderson, 483 U.S. at 638. Indeed, the Supreme Court and the Tenth Circuit have recognized these suits may unduly interfere with the discharge of discretionary duties due to the constant fear civil litigation and potential monetary damages. See Harlowe v. Fitzgerald, 457 U.S. 800, 814 (1982); Wilson v. Stock, 52 F.3d 1547, 1552 (10th Cir. 1995). "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1277 (10th Cir. 1998) (internal quotations omitted) (citing Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)).

In order to balance these competing interests, government officials performing discretionary duties are afforded qualified immunity shielding them from civil damages liability. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009). Qualified immunity protects these officials unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well.[1] See Horstkoetter, 159 F.3d at 1277.

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, [the court] will also review this defense on a motion to dismiss" but will "not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Peterson v. Jensen, 371 F.3d 1199, 1201-02, (10th Cir. 2004) (quoting Currier v. Doran, 242 F.3d 905, 917 (10th Cir. 2001)). In the past, the Tenth Circuit has required a plaintiff to meet a heightened pleading standard upon a defendant's assertion of qualified immunity. Currier, 242 F.3d at 911. The Tenth Circuit in Currier held, however, that this heightened pleading requirement does not survive the Supreme Court's opinion in Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Id. at 916.

---

[1] One of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be peculiarly disruptive of effective government." Anderson, 483 U.S. at 646 n.6.

-6-

When a defendant claims qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a constitutional right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. Pearson, 129 S. Ct. at 815-6. As noted in Pearson, courts are no longer required to follow the two-step sequence mandated by Saucier v. Katz, 533 U.S. 194 (2001). Id. at 818. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

### 1. Danger Creation Claim

First, plaintiffs respond that defendant misread the complaint. The Crosettos allege that they began to notice bruising on their grandchildren in Fall 2007. Defendant claims that she was not notified of any abuse until the school called her on November 5, 2007. Plaintiffs do not specifically dispute the actual date defendant received notice of abuse, but state generally that defendant was aware of the abuse in Fall 2007. True, November 5 does fall in the broader category of Fall 2007, but plaintiffs have not alleged any specific dates prior to November 5 in which defendant received notice of abuse. Therefore, defendant did not misread the complaint.

Next plaintiffs respond that defendant was deliberately indifferent in failing to protect B.I.C. and C.S.C. and as a result, violated the their constitutional rights.

In DeShaney v. Winnebago County Dept. of Social Services, 489

-7-

U.S. 189, 196-97,(1989) the United States Supreme Court stated that "[a] State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide them."[2] As a general rule, no constitutional violation occurs when a state fails to protect an individual against private violence. Id. at 197. However, the Tenth Circuit recognizes two exceptions: (1) the special relationship doctrine and (2) the danger creation theory. Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist., 511 F.3d 1114, 1126 (10th Cir. 2008).

Plaintiffs allege that defendant created the danger that harmed B.I.C. A state actor can be liable for acts of a third party when she created the danger that caused the harm. Briggs v. Johnson, No. 07-6037, 2008 WL 1815721, at *3 (10th Cir. Apr. 23, 2008).

> A danger creation claim must meet a six-part test: (1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience. (Citations omitted). Regarding the necessary culpability, the Due Process clause only protects against "deliberately wrongful government decisions rather than merely negligent government conduct." Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995).

Rost, 511 F.3d at 1126.

Defendant does not argue that plaintiffs failed to meet any specific part of the danger creation test. Instead, defendant argues generally that defendant had no duty to act under DeShaney and further that she did nothing affirmatively to increase the danger of harm to

---

[2] DeShaney involved a "special relationship" claim.

the children.  Therefore, based upon the factual circumstances in Currier v. Doran, 242 F.3d 905, 922 (10th Cir. 2001)[3] the court will assume that plaintiffs are members of a limited and specified group. Additionally, the court finds that plaintiffs' complaint sufficiently alleges that defendant had notice as to the abuse and that she acted recklessly, maliciously, and with gross negligence by not protecting B.I.C. and C.S.C.  As such, plaintiffs have alleged the requisite culpability.

Moving to the issue on defendant's affirmative acts, if any, "it is important to distinguish between affirmative conduct that creates or enhances a danger and a failure to act that merely does not decrease or eliminate a pre-existing danger.  This distinction, while subtle, is critical under DeShaney and its progeny." Gonzales v. City of Castle Rock, 307 F.3d 1258, 1263 (10th Cir. ,2002) (overruled by Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748 (2005) on procedural due process issue).

On December 10, 2007, Mr. Crosetto called defendant to report that the bruises on their grandchildren's were escalating.  Defendant told Mr. Crosetto to contact the police.  Plaintiffs further allege that they provided defendant with a CD of photographs of B.I.C.'s injuries and that defendant refused to accept it.

The court finds that defendant's instruction to call the police and refusal to accept evidence of abuse were affirmative acts. Defendant refused to investigate allegations of abuse which increased

---

[3] Currier v. Doran involved a § 1983 claim alleging that defendant social workers failed to investigate allegations of child abuse.

-9-

the vulnerability and likelihood of danger to B.I.C. and C.S.C. See, e.g., Currier, 242 F.3d at 922 (finding that the defendant social worker discouraged the mother from reporting additional abuse, which increased the children's vulnerability). While defendant did tell the Crosettos the CD was a police matter, the police were not investigating the matter because they believed that defendant "was undertaking her statutory obligations to safeguard ... B.I.C. and C.S.C." (Doc. 1 at 4). As such, defendant's acts of telling the Crosettos to take evidence of abuse to the police, when the police believed defendant was handling the matter as there was an open case, discouraged plaintiffs from seeking help. See id. ("[T]he state can be liable when it affirmatively places private citizens in harm's way by removing what would otherwise be safety valves."). The court finds that plaintiffs' complaint alleges sufficient facts such that a danger creation claim under § 1983 is plausible.

### 2. Familial Association

The Due Process Clause of the Fourteenth Amendment protects the right to familial association. Lowery v. County of Riley, 522 F.3d 1086, 1092 (10th Cir. 2008). The court must balance "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." Additionally, plaintiffs must assert "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association" to state a claim under § 1983. Trujillo v. Board of County Com'rs of Santa Fe County, 768 F.2d 1186, 1190 (10th Cir. 1985). Defendant must have knowledge that her direct conduct regarding plaintiff's familial will adversely affect that relationship. Lowery, 522 F.3d at 1092.

Plaintiffs have alleged that defendant intentionally interfered with their familial relationship with B.I.C. (Doc. 1 at 5). Plaintiffs claim that defendant acted with malice and animus towards the Crosettos based upon a pre-existing grudge that developed when they were in the process of adopting their daughter. Plaintiffs' claim that defendant failed to take actions to protect their grandchildren as a result of her grudge.

Plaintiffs' have alleged sufficient facts to establish a constitutional violation based on interference with plaintiffs' familial relationship with B.I.C. The Tenth Circuit has held that a right of familial association extends between grandparents and grandchildren. Suasnavas v. Stover, No. 05-5171, 2006 WL 2458678, at *9 (10th Cir. Aug. 25, 2006). Therefore plaintiffs' have sufficiently pleaded its familial association claim.

Confining its review to the allegations set forth in the complaint, and accepting all allegations as true, the court finds that defendants are not entitled to a Rule 12(b)(6) dismissal of plaintiffs' complaint based on their qualified immunity defense. The court acknowledges that no discovery has been done at this stage and that a developed factual record may or may not support plaintiffs' claims. The court is also cognizant of the burden discovery puts on the state in § 1983 cases. Therefore, the court limits discovery to the issue of qualified immunity.

**IV. CONCLUSION**

For the reasons stated more fully herein, defendant's motion to dismiss (Doc. 8) is denied. The case is to be referred to the magistrate to oversee discovery.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this  28th  day of May 2010, at Wichita, Kansas.

                                          s/ Monti Belot
                                          Monti L. Belot
                                          UNITED STATES DISTRICT JUDGE